# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ADRIAN M. WHITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:16-cv-01235-SGC |
| | ) | |
| BERCKMAN'S FOODS, INC. *d/b/a* | ) | |
| *McDonald's*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The court has before it the July 28, 2017 motion for summary judgment filed by Defendant Berckman's Food's, Inc. d/b/a McDonald's.[2]  (Doc. 23).  Pursuant to the court's initial order (Doc. 18) and the August 11, 2017 and September 1, 2017 orders (Docs. 26, 29), the motion is fully briefed and under submission as of September 22, 2017.[3]  After consideration of the briefs and evidence, the motion is due to be granted for the following reasons.

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 16).

[2]  As explained in the court's August 11, 2017 order (Doc. 25), the amended complaint and docket sheet incorrectly identify Defendant as McDonald's a/k/a Berkman's Food. The correct name of Defendant is "Berckman's Foods, Inc. d/b/a McDonald's."

[3] The court also considered Plaintiff's notice of supplemental authority filed on January 20, 2018.  (Doc. 32).

## I.    STATEMENT OF FACTS[4]

Defendant is a McDonald's franchisee that owns and operates two McDonald's restaurants in Alabama.  (Doc. 23-1 at 1).  One restaurant is located in Brighton, Alabama, and the other is located in Bessemer, Alabama.  (*Id*.).  Alain Nkoudou is the sole owner of Defendant.  (*Id*.).

Plaintiff Adrian Whitt, a lesbian female, began working as a shift manager for Defendant at its location in Bessemer, Alabama, on March 31, 2013.  (Doc. 30-1 at 2, 3-4).  Plaintiff worked at that location until October 2013,[5] when she voluntarily resigned.  (*Id*. at 3).  In approximately December 2014,[6] Whitt was rehired by Defendant at its Brighton, Alabama location.  (*Id*.).  Whitt's manager and direct supervisor at the Brighton location was Dena Pass.  (*Id*.).

Plaintiff contends Pass began sexually harassing her from the first week of her employment at the Brighton location.  Plaintiff stated Pass told her, "I don't like people like you," during her first week after her rehire.  (*Id*. at 3).  Pass knew Plaintiff was a lesbian because Plaintiff's partner worked at the Bessemer store, told Pass they were in a committed relationship, and often picked up Plaintiff from

---

[4] Plaintiff's and Defendant's statement of facts differ dramatically in their briefs.  At the summary judgment stage, the court must accept the facts in the light most favorable to the plaintiff.  *Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008).  All reasonable doubts about the facts must be resolved in favor of the plaintiff.  *Id*.

[5] Defendant presented evidence Plaintiff was employed by Defendant between August 14, 2014, and September 10, 2014.  (Doc. 31-1 at 2, 5-6).  This evidence will be discussed in regard to Plaintiff's pretext argument.

[6] Nkoudou's amended affidavit states Plaintiff was rehired on January 5, 2015.  (Doc. 31-1 at 3).

work when her shift ended.[7]  (*Id*. at 3-4).  After that first week, Plaintiff contends

Pass continued to harass her.  Specifically, Plaintiff alleges:

- On numerous occasions, Pass commented Whitt was "too aggressive" and walked and talked like a man;

- Pass often stated Whitt needed to "tone down" her attitude to appear more "feminine";

- On one occasion, Pass, Nkoudou, and Whitt were sitting at a dining table when the discussion became heated.  Pass stated, "I barely talk to you because I don't deal with people like you."  Whitt asked Pass if she was referring to "gay people," and Pass nodded her head in the affirmative.  Nkoudou tried to comfort Whitt by stating, "I don't judge people," but then laughingly asked Whitt how she had kids if she was gay;

- After that meeting, Pass's alleged comments about Whitt's "sexual identity and lack of femininity" increased, and she often made these comments in front of customers, including telling one man "he was barking up the wrong tree with that one";

- Pass often questioned Whitt about why she lived a "lesbian lifestyle when men liked" her.  On numerous occasions, Pass stated, "I don't see why you're like that guys try to talk to you all the time."

- Pass told Whitt she needed to act more "lady like" because she "scares people";

- Pass often commented Whitt should walk more femininely, talk more femininely, date men, wear makeup, and look cute.

(*Id*.).

Plaintiff alleges she told Nkoudou she was being sexually harassed and treated hostilely by Pass because of her gender identity and gender non-

---

[7] Defendant does not dispute Pass knew Plaintiff was a lesbian.

conformity. (*Id*. at 4). Plaintiff asserts she also told the Bessemer store manager, Monique Taylor, about the alleged harassment. (*Id*.). Plaintiff contends Taylor attempted to address her allegations, and after Taylor would speak to Pass, the harassment would stop for about a day and then resume. (*Id*.). Both Nkoudou and Taylor deny Whitt ever complained of harassment. (Docs. 31-1 at 3, 7).

Plaintiff was terminated on July 31, 2015, for stealing money from the deposits during the time she was employed at Defendant's Bessemer location. (*Id*. at 2; Doc. 30-1 at 6). According to Defendant, employees reported to Nkoudou that Plaintiff had bragged about successfully stealing money from the deposits when she was a manager. (Doc. 31-1 at 2). Nkoudou investigated and offered Plaintiff an opportunity to respond to the allegations. (*Id*.). Plaintiff denied stealing any money. (Doc. 30-1 at 6). Nkoudou concluded Plaintiff stole the money and terminated her employment based on this conclusion. (Doc. 31-1 at 2).

Plaintiff filed a charge of discrimination with the EEOC on August 3, 2015. (Doc. 1-1 at 3). In her charge, Plaintiff outlined comments allegedly made by Pass and stated her belief that her "termination [wa]s a pretext for sexual discrimination" and she was terminated because of a "perceived failure to conform to a gender role." (*Id*.). The EEOC dismissed Plaintiff's charge on April 28, 2016, and Plaintiff timely filed her complaint on July 28, 2016. (*Id*. at 1; Doc. 1).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

## III.  DISCUSSION

Plaintiff's amended complaint asserts the following five claims against Defendant: (1) sexual harassment in violation of Title VII; (2) sexual discrimination in her termination in violation of Title VII; (3) invasion of privacy in violation of Alabama law; (4) intentional infliction of emotional distress in violation of Alabama law; and (5) negligent and/or malicious retention, supervision, and training in violation of Alabama law. (Doc. 3 at 4-8). Defendant contends Plaintiff's claims are due to be dismissed as a matter of law. (Doc. 23 at 7-25).

### A.  Title VII Claims

By its plain language, Title VII protects individuals against employment discrimination on the basis of race, color, national origin, sex, and religion. 42 U.S.C. § 2000e-2. Defendant contends Plaintiff's Title VII claims are not actionable because sexual orientation is not a protected classification. (Doc. 23 at 7-10). Plaintiff, however, states her sex discrimination claims are based on her gender-nonconformity and not on her sexual orientation. (Doc. 30 at 2).

Discrimination based upon sexual orientation is not actionable under Title VII in the Eleventh Circuit. *See Fredette v. BVP Mgmt. Associates*, 112 F.3d 1503,

1510 (11th Cir. 1997) (concluding that discrimination based on sexual orientation is not actionable under Title VII); *Fitzpatrick v. Winn-Dixie Montgomery, Inc.*, 153 F. Supp. 2d 1303, 1306 (M.D. Ala. 2001) ("sexual orientation is not a protected class under Title VII"). That being said, it is well-settled that Title VII's protections against sex discrimination extend to a bar against discrimination based on gender stereotyping. *See Price Waterhouse v. Hopkins*, 490 U.S. 229, 250-51, 258-61, 272-73 (1989) (respectively, plurality opinion, White, J., concurring, O'Connor, J., concurring) (holding Title VII bars gender stereotyping), *superseded on other grounds by statute*. Additionally, in the context of a Fourteenth Amendment Equal protection challenge, the Eleventh Circuit has recognized that gender stereotyping can be viewed as sex discrimination. *Glenn v. Brumby*, 663 F.3d 1312, 1318 (11th Cir. 2011).

Plaintiff asserts Pass harassed her based on gender stereotypes. The court rejects Defendant's argument that Plaintiff's EEOC charge and amended complaint are devoid of gender-nonconformity language. (Doc. 31 at 11). Plaintiff's EEOC charge states Pass made several comments based on gender stereotyping, including, "You are too aggressive." (Doc. 1-1 at 3). The amended complaint gives examples of comments such as, "I don't deal with people like you who act like men" and "you are too aggressive," and describes the reason for the harassment was "because [Plaintiff] did not conform to what a 'woman' was

supposed to act and look like." (Doc. 3 at 3-4). After reviewing the evidence in the light most favorable to Plaintiff, the court concludes Pass' comments implicate stereotyping by gender and her claims are cognizable under Title VII.

### 1. Hostile Work Environment

To establish a hostile work environment, Plaintiff must show (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the hostile environment under a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002); *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982). The "severe and pervasive" requirement is the "crucial" element in most harassment claims. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000), overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "Requiring the plaintiff to prove that the harassment is severe and pervasive ensures that Title VII does not become a mere general civility code." *Id*. (internal quotations and citation omitted). This requirement contains both an objective and a subjective component. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993); *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999). To

be actionable, the behavior must result in both an environment "that a reasonable person would find hostile or abusive" and an environment that the victim "subjectively perceive[s] . . . to be abusive." *Harris*, 510 U.S. at 22. In evaluating the objective severity of the harassment, the court considers: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citation omitted).

The court looks to the totality of the circumstances instead of requiring proof of each factor individually. *Harris*, 510 U.S. at 23. The "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment." *Harris*, 510 U.S. at 21 (internal quotations and citations omitted). Only when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the employment and create an abusive working environment," is the law violated. *Harris*, 510 U.S. at 21 (internal quotations and citations omitted).

In assessing the severity of an employer's conduct, the Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998); *see also Indest v. Freeman Decorating, Inc*., 164 F.3d 258, 264 (5th Cir. 1999) ("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment."). Title VII "does not operate as a general ban on . . . rude or offensive behavior." *Leslie v. Cumulus Media, Inc*., 814 F. Supp. 2d 1326, 1343 (S.D. Ala. 2011) (citation omitted); *see also Mendoza*, 195 F.3d at 1245. "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (internal citation omitted).

Plaintiff alleges Pass made comments "often" and "on numerous occasions." (Doc. 30-1 at 3-5). The alleged comments include Whitt was "too aggressive," she "walked and talked like a man," she needed to "tone down" her attitude to appear more "feminine," she needed to be more "lady like" because she "scare[d] people." (*Id*.). Additionally, Whitt contends Pass stated she "should walk more femininely, talk more femininely, date men, wear makeup, and look 'cute.'" (*Id*. at 5). Whitt asserts other statements were made regarding her sexual identity and lesbian lifestyle. (*Id*. at 4-5). Although Plaintiff's allegations may rise to the level of

pervasive,[8] the court concludes that Pass' comments were not objectively severe enough to alter Plaintiff's terms or conditions of employment.

"Many decisions throughout the circuits have rejected sexual-harassment claims based on conduct that is as serious or more serious than the conduct at issue in this [case]." *Mendoza*, 195 F.3d at 1246-47 (collecting cases). Although Plaintiff may have been humiliated and degraded by Pass' comments, she simply has not presented sufficient evidence to survive summary judgment on the issue of severity or pervasiveness. *Compare Leslie*, 814 F. Supp. 2d at 1343 (alleged harassment was not severe enough when plaintiff presented four "offhand" and "isolated" offensive comments and one instance of co-worker sending sexually suggestive email photograph), *and Howard v. City of Robertsdale,* 168 F. App'x 883, 885 889-90 (11th Cir. 2006) (holding that supervisor's offensive comments about employees' bodies and sex lives and sexual jokes made in front of other employees on a regular basis did not rise to the level of objectively severe or pervasive harassment), *with Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 812 (11th Cir. 2010) (evidence supported plaintiff's complaint that employer's offensive conduct occurred "every single day" and consisted of multiple derogatory terms aimed at women, vulgar sexual discussions, and the presence of pornographic images in the workplace and could allow a jury to draw a

---

[8] The court does not have to decide whether Pass' comments qualify as pervasive under Eleventh Circuit precedent because they do not rise to the level of severity required.

reasonable inference of pervasive harassment). Based upon the evidence in the summary judgment record, a reasonable jury would not be able to infer from the comments by Pass that her conduct was sufficiently severe to change the terms or conditions of Plaintiff's workplace.

Even if Plaintiff had presented enough evidence demonstrating that Pass' comments were severe or pervasive, she has not presented evidence that the "cumulative effect" of Pass' conduct "unreasonably interfered" with Plaintiff's job performance. *Mendoza*, 195 F.3d at 1248. Pass' comments may have bothered Plaintiff or been humiliating, but more is required for Plaintiff to make a showing that those comments were so severe or pervasive that Plaintiff's terms or conditions of employment were altered. In this regard, nothing in the record indicates the alleged harassing conduct impaired Plaintiff's job performance. Because the record is devoid of any evidence that Pass' conduct "unreasonably interfered" with Plaintiff's job performance, Plaintiff has not satisfied her burden to establish the conduct was severe or pervasive enough to alter the terms of employment. Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## 2. Termination

Plaintiff asserts she was terminated "on the basis of [her] gender non-conformity and refusal to comply with the Defendant's gender stereotypes of what

a female should look and act like." (Doc. 30-1 at 6). A Title VII disparate treatment claim based on circumstantial evidence, as the one presented here, is analyzed under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). To establish a prima facie case of disparate treatment, the plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). After a prima facie case is established, the employer has the burden to articulate a legitimate, nondiscriminatory reason for the employment decision. *Wilson*, 376 F.3d at 1087. This burden involves no credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, (1993), and has been characterized as "exceedingly light." *Perryman v. Johnson Prod. Co*., 698 F.2d 1138, 1141 (11th Cir. 1983). As long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). After an employer articulates one or more legitimate, non-discriminatory reasons for the employment action, the plaintiff must show the proffered reason was a pretext for illegal discrimination. *Id*. If the proffered reason is one that might motivate a

reasonable employer, a plaintiff cannot recast the reason but must "meet that reason head on and rebut it." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000).

Neither Plaintiff nor Defendant examines Plaintiff's termination claim through the lens of the prima facie case. Instead, both briefs focus on the legitimate, nondiscriminatory reason for Plaintiff's termination and whether Plaintiff presented evidence that Defendant's articulated reason is a pretext for unlawful discrimination. (Doc. 30 at 12-14; Doc. 31 at 5-6). Therefore, the court assumes, without deciding, Plaintiff established a prima facie case and moves forward in the *McDonnell Douglas* analysis.

Defendant has carried its "exceedingly light" burden of articulating legitimate, nondiscriminatory reasons for Plaintiff's termination. Specifically, Defendant contends it terminated Plaintiff for stealing money when she was manager at the Bessemer store. (Doc. 31-1 at 2). A $2,800 deposit from August 16, 2014, was recorded but never deposited in the bank. (*Id.*; Doc. 14-1 at 7). According to Defendant, employees reported Plaintiff bragged about successfully stealing money from deposits. (*Id.*). Nkoudou investigated the allegations, concluded Plaintiff stole the money, and terminated her. (*Id.*).

Because Defendant satisfied its burden of production of a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must come forward with

evidence sufficient to permit a reasonable fact finder to conclude the reasons Defendant gave were pretextual. *Burdine*, 450 U.S. at 253. Plaintiff may do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group, Inc*., 509 F.3d 1344, 1348-50 (11th Cir. 2007). Importantly, conclusory allegations of discrimination, without more, are insufficient to show pretext. *Mayfield v. Patterson Pump Co*., 101 F.3d 1371, 1376 (11th Cir. 1996). "A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).

To show pretext, a plaintiff may not merely quarrel with the wisdom of the employer's reason but must meet the reason head on and rebut it. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010); *Chapman*, 229 F.3d at 1034. The inquiry into pretext is based on "the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). As the Eleventh Circuit explained, "to be blunt about it," the inquiry does not center "on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266 (explaining the question is not whether

the employee actually had performance problems but "whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints . . . as cover for" discrimination).

As evidence of pretext, Plaintiff contends Defendant's nondiscriminatory reason for terminating her is unworthy of credence. (Doc. 30 at 13-14). Specifically, Plaintiff asserts she was not employed by Defendant when the money was allegedly stolen. (*Id*.). Plaintiff states she resigned her shift manager position at the Bessemer location in October 2013, and the money was allegedly stolen in September 2014. (Doc. 30-1 at 6). She was not rehired until December 2014, which was six to eight weeks after the alleged theft. (*Id*.).

In its reply brief, Defendant contends Plaintiff was employed during the time of the alleged theft. (Doc. 31 at 5-6). In support of this contention, Defendant attached the affidavit of Nkoudou and two pay stubs and checks for Plaintiff.[9] (Doc. 31-1 at 2, 5-6). Nkoudou states "the missing deposit that was recorded but never deposited in the bank occurred [on] . . . August 16, 2014." (*Id*. at 2). The pay stubs are dated September 1, 2014, and September 15, 2014. (*Id*. at 5-6). The

---

[9] These documents are records maintained in the normal course of business for Defendant, and they are admissible. (Doc. 31-1 at 2); Fed. R. Evid. 803(6). There is no indication "the source of the information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 833(6). Although the evidence was filed with Defendant's reply brief, Plaintiff has had ample opportunity to seek leave to file a response to this evidence. In fact, Plaintiff filed a notice of supplemental authority on January 20, 2018. (Doc. 32).

September 1, 2014 pay stub is for the pay period beginning on August 14, 2014, and ending on August 27, 2014, and the September 15, 2014 pay stub is for the pay period beginning on August 28, 2014, and ending on September 10, 2014. (*Id.*).

These documents establish, at the very least, Defendant believed Plaintiff was employed at the time of the theft. That belief is all that is required. For purposes of Rule 56, the court is not concerned with whether Plaintiff actually committed the offense but whether Defendant honestly believed Plaintiff engaged in the misconduct. "An employer who fires an employee under a mistaken but honest impression that an employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1363 (11th Cir. 1999). The "sole concern is whether unlawful discriminatory animus motivated" the termination. *Alvarez*, 610 F.3d at 1266.

Plaintiff has presented no evidence to even suggest Nkoudou did not believe Plaintiff stole the deposit money. She can dispute whether his conclusion was correct, but such an argument is not sufficient under the law. *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). The pretext inquiry "centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266 (citing *Holifield*, 115 F.3d at 1565). Therefore, Plaintiff has failed to establish the reasons stated for her termination were a pretext for sex

discrimination. Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

## B. State Law Claims

### 1. Invasion of Privacy

Alabama law defines the tort of invasion of privacy as "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW–FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986). Alabama courts have generally required invasion of privacy claims to allege both ongoing, persistent verbal harassment and unwanted physical contact. *See*, e.g., *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (substantial evidence supported finding that defendant committed an invasion of privacy when plaintiff presented evidence defendant repeatedly touched her in a manner that was unwelcome and with sexual overtones, "made several lewd comments[,] asked [ plaintiff] to meet him outside of work for other than business purposes [,] ... [and] looked up [plaintiff's] skirt on more than one occasion"); *Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 711 (Ala. 1983) (finding the facts supported an invasion of privacy claim when plaintiff testified defendant called her into his office, locked the door, and interrogated her about her sexual relationship with her husband, repeatedly demanded sexual favors from her, reacted violently when she

refused, "[o]n one occasion struck her across the buttocks with his hand[, and o]n still another occasion, . . . began papering his office window, thus obscuring the view of those in the surrounding area, in pursuit of what he hoped would be the consummation of lurid propositions to [p]laintiff"); *Cunningham v. Dabbs*, 703 So. 2d 979, 980–81, 982 (Ala. Civ. App. 1997) (finding a reasonable jury could conclude defendant intruded on the plaintiff's privacy when defendant "frequently rubbed [plaintiff's] shoulders and repeatedly made lewd and suggestive comments to her, including suggestions that they have sex" and on one occasion "leaned over her as if he were going to whisper something to her and stuck his tongue in her ear"). Additionally, the Alabama Supreme Court has noted "[e]ven the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability" for the tort of invasion of privacy. *McIsaac*, 495 So. 2d at 652 (Ala. 1986) (citing *Logan v. Sears, Roebuck & Co.*, 466 So. 2d 121, 124 (Ala.1985) and W. Prosser, LAW OF TORTS, 54–55 (4th ed. 1971)).

Plaintiff's allegations do not state a claim of invasion of privacy under Alabama law. There are no allegations in the record of any unwanted physical contact, and the harassment allegations fall short of those recognized by Alabama law. Defendant is entitled to summary judgment on Plaintiff's invasion of privacy claim.

## 2. Intentional Infliction of Emotional Distress

Egregious sexual harassment is one of the areas of conduct constituting the tort of outrage under Alabama law, also known as intentional infliction of emotional distress. *See Wilson v. University of Ala. Health Servs. Found., P.C., et al.*, 2017 WL 6397654, at *3 (Ala. 2017); *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (citing *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989)). The tort of intentional infliction of emotional distress is "an extremely limited cause of action." *Potts*, 771 So. 2d at 465. Conduct falling within the tort of outrage must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981).

To prevail on the tort of outrage claim, Plaintiff must present evidence indicating that Pass' conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993). Plaintiff's allegations do not rise to the level recognized by Alabama law. *See Harrelson v. R.J.*, 882 So. 2d 317, 322-23 (Ala. 2003) (holding a minor who had been sexually assaulted at a sleepover suffered severe emotional distress because after the assault she became much more emotional and became hysterical once a month, became more fearful, did not

improve despite counseling from mental health experts, and wrote poetry indicating she wanted to die). Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

### 3. Negligent and/or Malicious Retention, Supervision, and Training

"An employer cannot be independently guilty of negligent training or supervision 'in the absence of some tort committed by [an employee] against [the plaintiff].'" *Blackwood v. Arc of Madison Cnty., Inc.,* 2012 WL 5932451, at *6 (N.D. Ala. Nov. 26, 2012) (quoting *Taylor v. Stevenson*, 820 So. 2d 810, 812 (Ala. 2001). Further, the employee's tort must be "recognized under Alabama common law." *Jackson v. Cintas Corp.,* 391 F. Supp. 2d 1075, 1100 (M.D. Ala. 2005) (citing *Stevenson*, 762 So. 2d at 824)). The alleged sexual harassment by Pass forms the basis for Plaintiff's claim.

As a general rule, Alabama does not recognize an independent cause of action for sexual harassment, and thus, the alleged sexual harassment alone cannot be the underlying tort necessary for Plaintiff's negligent retention, supervision, and training claim. *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824–25 (Ala. 1999). However, the Alabama Supreme Court has recognized a sexual harassment exception to the requirement that a common law tort must underlie a negligent hiring, training, supervision, and retention claim: "the manner in which a sexual-harassment complaint is handled when sexual harassment has, in fact,

occurred can form the basis for a claim for negligent or wanton supervision" when the handling of the complaint did not cause the harassment to cease or caused it to only temporarily cease. *Id*. at 825.

For Plaintiff to maintain her claim for negligent retention, supervision, and training under Alabama law, one thing is clear: the court must find the "sexual harassment has, in fact, occurred." *Id*. Here, Plaintiff's sexual harassment claim fails because she has not satisfied her burden to establish the conduct was severe or pervasive enough to alter the terms of her employment. Because Plaintiff cannot establish an underlying tort, Plaintiff's claim for negligent retention, supervision, and training fails, and Defendant is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant Berckman's Foods, Inc. d/b/a McDonald's is entitled to judgment as a matter of law on all the claims asserted in Plaintiff's Amended Complaint. Defendant's motion for summary judgment (Doc. 23) is due to be granted. A separate order will be entered.

**DONE** this 20th day of March, 2018.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE